UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

UFCW LOCAL ONE HEALTH CARE FUND and its
TRUSTEES: Frank C. DeRiso, Raymond Wardynski,
Robert Ciancaglini, I. Stephen Davis, Roger Hemmitt,       6:23-cv-1441 (BKS/MJK)
Joseph L. Sahlen, and Greg P. Gorea, and UFCW LOCAL
ONE PENSION FUND and its TRUSTEES: Frank C.
DeRiso, Gregory Gorea, Mark Manna, and Michael R.
Bull,

                              Plaintiffs,

v.

GREENE GREAT AMERICAN, INC. and OBER
REALTY, LLC,

                              Defendants.

---

**Appearance:**

*For Plaintiffs:*
Richard S. Siegel
Slevin & Hart, P.C.
1625 Massachusetts Avenue, NW, Suite 450
Washington, DC 20036

**Hon. Brenda K. Sannes, Chief United States District Judge:**

                              **MEMORANDUM-DECISION AND ORDER**

**I.    INTRODUCTION**

       Plaintiffs UFCW Local One Health Care Fund and its trustees, Frank C. DeRiso, Raymond Wardynski, Robert Ciancaglini, I. Stephen Davis, Roger Hemmitt, Joseph L. Sahlen, and Greg P. Gorea, (the "Health Fund") and UFCW Local One Pension Fund and its trustees, Frank C. DeRiso, Gregory Gorea, Mark Manna, and Michael R. Bull (the "Pension Fund"), filed this action against Defendants Greene Great American, Inc. ("Greene") and Ober Realty, LLC, alleging that Defendants violated the Employee Retirement Income Security Act of 1974

("ERISA"), 29 U.S.C. § 1001 et seq. (Dkt. No. 1). In Count I, the Health Fund Plaintiffs allege that Defendant Greene failed to contribute "the required amount of contributions owed" under the collective bargaining agreement ("CBA") in the amount of $115,240.00 plus interest and failed to pay interest on late-paid contributions at various points between 2020 and 2022 in the amount of $3,546.61, in violation of Section 515 of ERISA, 29 U.S.C. § 1145. (Dkt. No. 1, ¶¶ 36–38). In Count II, the Pension Fund Plaintiffs allege that Greene is in default due to delinquent contributions and is liable for withdrawal liability under Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), in the amount of $10,845,125.00 plus interest, liquidated damages, and attorneys' fees. (Dkt. No. 1, ¶¶ 40–43). In Count III, the Pension Fund Plaintiffs allege that Defendant Ober Realty, "as a trade or business under common control with Greene," "is jointly and severally liable for Greene's withdrawal liability under Section 4001(b)(1) of ERISA, 29 U.S.C. § 1301(b)(1) and Section 414(c) of the Internal Revenue Code." (Dkt. No. 1, ¶¶ 45–50). Defendants have not answered the complaint or otherwise appeared in this action. Presently before the Court is Plaintiffs' motion pursuant to Rule 55(b) of the Federal Rules of Civil Procedure for default judgment. (Dkt. No. 15). Plaintiffs seek a monetary judgment against Defendants for amounts due to the Health Care Fund and Pension Fund, as well as costs and attorney's fees. For the following reasons, Plaintiffs' motion for default judgment is granted in part and denied in part, without prejudice to renewal.

## II. DISCUSSION

### A. Standard of Review & Clerk's Entry of Default

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *Priestly v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). First, under Rule 55(a), the plaintiff must obtain a clerk's entry of default. Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or

otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."); *see also* N.D.N.Y. L.R. 55.1 (requiring a party seeking a clerk's entry of default to "submit an affidavit showing that (1) the party against whom it seeks a judgment . . . is not an infant, in the military, or an incompetent person[,] (2) a party against whom it seeks a judgment for affirmative relief has failed to plead or otherwise defend the action . . . [,] and (3) it has properly served the pleading to which the opposing party has not responded"). Second, under Rule 55(b)(2), the plaintiff must "apply to the court for entry of a default judgment." *Priestly*, 647 F.3d at 505; *see also* N.D.N.Y. L.R. 55.2(b) ("A party shall accompany a motion to the Court for the entry of a default judgment, pursuant to Fed. R. Civ. P. 55(b)(2), with a clerk's certificate of entry of default . . . , a proposed form of default judgment, and a copy of the pleading to which no response has been made.").

On December 19, 2023, Plaintiffs served Defendants with the summons and complaint. (Dkt. Nos. 8–9). On January 17, 2024, Plaintiffs requested a clerk's entry of default under Rule 55(a) for Defendants' failure to answer or otherwise appear in this action. (Dkt. No. 11). Plaintiffs' request was accompanied by an affidavit, as required by Local Rule 55.1, showing that: Defendants are corporations and thus are not infants, in the military, or incompetent; Defendants failed to appear in this action; and Plaintiffs properly served the summons and complaint. (Dkt. No. 11-1). On January 25, Plaintiffs received a clerk's entry of default against both Defendants. (Dkt. No. 12). Plaintiffs filed the instant motion for default judgment under Rule 55(b) on February 23. (Dkt. No. 15). Although Plaintiffs served the motion on Defendants, (*see* Dkt. No. 15, at 2 (certificate of service)), Defendants filed no response. Therefore, Plaintiffs have met the procedural requirements and are entitled to an order of default under Rule 55(b)(2)

3

of the Federal Rules of Civil Procedure and Local Rule 55.2(b). Accordingly, the Court will address liability.

### B. Liability

By failing to appear in this action or oppose this motion, Defendants are deemed to have admitted the factual allegations in the complaint. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an 'ancient common law axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint." (citation omitted)); *Rolex Watch, U.S.A., Inc. v. Pharel*, No. 09-cv-4810, 2011 WL 1131401, at *2, 2011 U.S. Dist. LEXIS 32249, at *5–6 (E.D.N.Y. Mar. 11, 2011) ("In considering a motion for default judgment, the court will treat the well-pleaded factual allegations of the complaint as true, and the court will then analyze those facts for their sufficiency to state a claim."), *report and recommendation adopted*, 2011 WL 1130457, 2011 U.S. Dist. LEXIS 32246 (E.D.N.Y. Mar. 28, 2011). But before entering default judgment, the Court must review the allegations to determine whether Plaintiffs have stated a valid claim for relief. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); *Telequip Corp. v. Change Exch.*, No. 01-cv-1748, 2004 WL 1739545, at *1, 2004 U.S. Dist. LEXIS 14892, at *3 (N.D.N.Y. Aug. 3, 2004).

#### 1. Unpaid and Delinquent Contributions

Under Section 515 of ERISA:

> [e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.

Plaintiffs allege that Greene is an employer in an industry affecting commerce as defined in Section 3(5)(11) and (12) of ERISA, (Dkt. No. 1, ¶ 13), and that the Health Fund is a

multiemployer welfare benefit plan within the meaning of Sections 3(1) and 3(37) of ERISA, 29 U.S.C. §§ 1002(1) and 1002(37), respectively, (Dkt. No. 1, ¶ 5). Plaintiffs also allege that Greene "was a signatory to and bound by a [CBA] with" the United Food & Commercial Workers District Union Local One (the "Union") "under which it was required to make contributions to the Funds each month on behalf of its employees who were covered by the CBA. (*Id.* ¶¶ 5, 17). "The terms of the CBA obligated Greene to be bound by the Funds' respective Agreements and Declarations of Trust ('Trust Agreements')." (*Id.* ¶ 18). "The CBA and the Trust Agreement required Greene to submit monthly contributions to the Fund on behalf of its eligible employees." (*Id.* ¶ 20). According to Count I, Greene is liable under ERISA for failing to remit $115,240 in contributions owed under the CBA for the period July 2022 through April 2023, and failing to pay "the Health Fund interest on late-paid contributions for the period of January 2020, June 2020, August 2020 through September 2021, and December 2021 through June 2022." (*Id.* ¶¶ 36–37).

Plaintiffs have submitted copies of the applicable CBA and Trust Agreements. (*See* Dkt. No. 15-3 (CBA between the Union and Greene, Sept. 26, 2018 to Sept. 25, 2021); Dkt. No. 15-4 (CBA between the Union and Greene, Sept. 26, 2021 to Sept. 25, 2024); Dkt. No. 15-5 (Union Health Care Fund Trust Agreement)). Article 46 of both CBAs requires Greene to "pay monthly, within fifteen (15) days after the last day of the last payroll period each month, to the . . . Health Care fund" "the following sums per employee per month upon eligibility for such contributions":

| Full-Time Employees | 1/1/19 | 1/1/20 | 1/1/21 | |
|---|---|---|---|---|
| Family coverage: | $1118.00 | $1141.00 | $1255.00 | |
| | | | | |
| Part-Time Employees | 1/1/19 | 1/1/20 | 1/1/21 | |
| Individual coverage: | $652.00 | $665.00 | $732.00 | |
| Wrap coverage: | $107.00 | $107.00 | $118.00 | |
| | | | | |
| Full Time Employees | 10/1/21 | 1/1/22 | 1/1/23 | 1/1/24 |

| | | | | |
|---|---|---|---|---|
| Family coverage: | $1245.00 | $1328.00 | $1408.00 | $1549.00 |
| | | | | |
| <u>Part Time Employees</u> | 10/1/21 | 1/1/22 | 1/1/23 | 1/1/24 |
| Individual coverage: | $733.00 | $784.00 | $839.00 | $923.00 |
| Wrap coverage: | $118.00 | $126.00 | $135.00 | $149.00 |

(Dkt. No. 15-3, at 28; Dkt. No. 15-4, at 28). Under Article 46.7 and 46.8 of the CBAs, Greene expressly agreed "to be bound by the terms and provisions of" the Trust Agreement and acknowledged "the provisions of the Trust Agreement dealing with the authority of the Trustees to compel and enforce the payment of contributions required hereunder." (Dkt. No. 15-3, at 29–30; Dkt. No. 15-4, at 29–30).

The Health Care Fund Trust Agreement authorizes the Health Care Fund Trustees to "establish the policy and the rules pursuant to which the Fund and the Plans of Benefits are to be operated and administered, including rules relating to the collection of Contributions and other payments, and amend such from time to time as necessary and appropriate." (Dkt. No. 15-5, at 10 (Article V, Section 3(b))). In a declaration, Michael Ciancaglini, the Administrative Director for the Health Care and Pension Funds, explains that "pursuant to" the authority granted in the Health Care Fund and Pension Fund Trust Agreements, the Health Care Fund and Pension Fund Trustees "adopted a joint Policy for Collection of Delinquent Contributions" ("Delinquency Policy"). (Dkt. No. 15-2, ¶ 6; Dkt. No. 15-7).

The Delinquency Policy provides that contributions "shall become delinquent if not paid on or before the Due Date," (Dkt. No. 15-7, at 3 (Section 2.1)), that interest "shall be charged at the rate of eight percent (8%) per year, calculated from the Due Date . . . until the date paid, (*id.* (Section 2.3)), that liquidated damages "shall accrue on delinquent contributions if contributions are not received on or before the Due Date . . . and shall become due and owing if the Fund commences a lawsuit to recover the delinquent contributions," and that "liquidated damages

6

shall equal 20 percent of the delinquent contributions," *id.* (Section 2.2), that "attorneys' fees shall be due to the Fund from a delinquent employer at the hourly rate charged to the Fund for such services, for all time spent by counsel in collection efforts," (*id.* at 10 (Section 6.2)), and that "all costs (including but not limited to attorneys' fees and accountants' fees incurred) . . . to determine, discover and collect delinquent contributions . . . shall be due to the Funds from the delinquent employer," (*id.* (Section 6.3)).

Accordingly, by virtue of the above contractual provisions, Plaintiffs' allegations that "Greene failed to make contributions to the Health Fund as required under the CBA for the period of July 2022 through April 2023," and failed to pay interest to the Health Fund on late-paid contributions for the period of January 2020, June 2020, August 2020 through September 2021, and December 2021 through June 2022, are sufficient to establish Greene's liability for delinquent contributions and deductions under ERISA, the interest due thereon, as well as for the interest on late-paid contributions.[1] *See United States v. Beam*, No. 12-cv-87, 2012 WL 1802316, at *2, 2012 U.S. Dist. LEXIS 69054, at *4 (N.D.N.Y. May 17, 2012) ("By failing to answer plaintiff's complaint or oppose this motion, defendant has effectively conceded that[it] is bound by the terms of the [Agreement] [it] entered into with plaintiff."); *Gesualdi v. Reid*, 198 F. Supp. 3d 211, 218 (E.D.N.Y. 2016) (finding the defendant liable to the plaintiff funds under Section

---

[1] Insofar as Plaintiffs seek interest in connection with Greene's late payments of the January 2020, June 2020, August 2020 through September 2021, and December 2021 through June 2022 contributions, because the Complaint alleges that Greene's delinquent contributions were paid prior to Plaintiffs' filing of this action in 2023, see Dkt. No. 1, ¶ 37 (alleging "Greene failed to pay the Health Fund interest on late-*paid* contributions"), their right of recovery lies not under ERISA, *see Iron Workers Dist. Council of Western N.Y. & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1507 (2d Cir.1995) ("no [section 1132(g)(2) ] suit can be commenced in the absence of unpaid contributions"), but under the contractual provisions of the CBA and corresponding documents which authorize interest on late contribution payments, *see Gesualdi v. Fortunata Carting Inc.*, 5 F. Supp. 3d 262, 276 (E.D.N.Y. 2014) (noting that although the "plaintiffs have no right under ERISA to seek damages for those delinquent contributions that were paid prior to the suit being filed," the plaintiffs were nonetheless entitled to an award of interest where the "Trust Agreement" provided "a contractual basis exists for recovering interest . . . for those untimely contributions"), *report and recommendation adopted by Gesualdi*, 5 F. Supp. 3d at 265–66.

505 of ERISA, 29 U.S.C. § 1145 for failing, inter alia, to pay delinquencies). Accordingly, Plaintiffs' motion for default judgment is granted as to liability with respect to their Unpaid and Delinquent Contributions claim (Count I),

### 2. Withdrawal Liability - Greene

ERISA, as amended by the Multiemployer Pension Plan Amendments Act ("MPPAA"), provides "that '[i]f an employer withdraws from a multiemployer plan . . . then the employer is liable to the plan in the amount determined . . . to be the withdrawal liability.'" *New York State Teamsters Conf. Pension & Ret. Fund v. C&S Wholesale Grocers, Inc.*, 24 F.4th 163, 170 (2d Cir. 2022) (quoting 29 U.S.C. § 1381(a)); *see I.L.G.W.U. Nat'l Ret. Fund v. ESI Grp., Inc.*, No. 92-cv-597, 2002 WL 999303, at *9 (S.D.N.Y. May 15, 2002) (explaining that the MPPAA was enacted "to ensure that workers' retirement benefits would actually be available during retirement"), *aff'd sub nom. I.L.G.W.U. Nat'l Ret. Fund v. Meredith Grey, Inc.*, 94 F. App'x 850 (2d Cir. 2003).

Ciancaglini states that that the "Pension Fund determined that, on or about March 31, 2023, Greene effected a 'complete withdrawal' from the Pension Fund within the meaning of ERISA § 4203(a), 29 U.S.C. § 1383(a)." (Dkt. No. 1, ¶ 25). The Second Circuit has explained withdrawal liability and "complete withdrawal" as follows:

> Withdrawal liability is calculated based on the MPPAA, and generally represents the portion of a multiemployer pension fund's "unfunded vested benefits" allocable to the withdrawing employer. A "complete withdrawal," which can trigger liability under the statute, occurs when an employer "permanently ceases to have an obligation to contribute under the plan" or "permanently ceases all covered operations under the plan," for example by going out of business, or renegotiating the terms of its CBA. When this occurs, "the entity maintaining the plan[ ] must determine the amount of the employer's withdrawal liability, notify the employer of the amount[,] and make a demand for payment."

*C&S Wholesale Grocers, Inc.*, 24 F.4th at 170–71 (first quoting 29 U.S.C. § 1383(a)); and then quoting *ILGWU Nat'l Ret. Fund v. Levy Bros. Frocks, Inc.*, 846 F.2d 879, 881 (2d Cir. 1988)). In this case, the Pension Fund's "Withdrawal Liability Rules" define withdrawal as follows:

> Withdrawal of an Employer means the occurrence of the earlier of either the Permanent cessation by the Employer of the obligation to contribute to the Fund or the Permanent cessation of work covered under collective bargaining agreements obligating the Employer to contribute to the Fund. In the event of such an occurrence, the Employer is considered a "Withdrawn Employer." . . . For purposes of this Section . . . an "obligation to contribute" means an obligation to contribute arising under one or more collective bargaining (or related) agreements or as a result of a duty under applicable labor-management relations law.

(Dkt. No. 15-10, at 5 (Section 1.15)). It defines "Permanent" as "a condition expected to last indefinitely, as determined in the sole discretion of the Board of Trustees." (*Id.* (Section 1.10)).

The complaint alleges that the "Pension Fund determined that, on or about March 31, 2023, Greene effected a 'complete withdrawal' from the Pension Fund within the meaning of ERISA § 4203(a), 29 U.S.C. § 1383(a)." (Dkt. No. 1, ¶ 25). While the complaint offers some details regarding Greene's alleged failure to contribute to the Health Fund, it is devoid of factual allegations showing that Greene failed to contribute to the Pension Fund. Nor do any of Plaintiffs' exhibits contain factual information showing Greene's failure to contribute to the Pension Fund. The only supporting exhibits contain "an account breakdown setting forth the delinquent contributions," but do not explain how the breakdown was calculated. (Dkt. No. 15, at 20, 181, 183). And even if the Court were to find the complaint plausibly alleged withdrawal liability, as discussed below, the present record is insufficient to support a damages determination. Accordingly, the Court concludes that Plaintiffs have failed to establish withdrawal liability as to Greene in connection with Count II and their motion for default judgment is denied without prejudice to renewal with additional documentation.

9

### 3. Withdrawal Liability – Ober Realty

Plaintiffs allege that "[a]s a trade or business under common control with Greene, Ober Realty is jointly and severally liable for Greene's withdrawal liability" and that it is a "domestic limited liability company organized under the laws of the New York, with its principal office located at 4 Sandy Lane, Binghamton, New York." (Dkt. No. 1, ¶¶ 15, 46). Greene's principal office shares the same address. (*Id.* ¶ 14). Plaintiffs further represent that "Ober Realty owns the real property at 166 S. Chenango St. in Greene, NY, where Greene operated its grocery store." (Dkt. No. 15-12, ¶ 6).

Under 29 U.S.C. § 1301(b)(1) of ERISA, "[a]ll 'trades or businesses' under 'common control' are treated as a single employer for the purpose of collecting withdrawal liability, and each is jointly and severally liable for the withdrawal liability of another." *Trustees of the Local 813 Pension Tr. Fund v. Frank Miceli Jr. Contracting, Inc.*, No. 13-cv-0198, 2016 WL 1275041, at *3, 2016 U.S. Dist. LEXIS 44392, at *7 (E.D.N.Y. Mar. 31, 2016) (quoting *UFCW Local One Pension Fund v. Enivel Props., LLC*, 791 F.3d 369, 371 (2d Cir. 2015)); *see also* Internal Revenue Code § 414(c). Here, however, Plaintiffs fail to provide any facts in the Complaint or elsewhere that would support its allegation that Ober Realty was under common control with Greene. "[U]nder a 'common control' theory, Plaintiff must set forth facts illustrating that [the defendant entities] "are members of a 'parent-subsidiary' or 'brother-sister' group of trades or businesses under common control." *Div. 1181 Amalgamated Transit Union-New York Emps. Pension Fund v. D & A Bus Co., Inc.*, 270 F. Supp. 3d 593, 610 (E.D.N.Y. 2017) (quoting *I.L.G.W.U. Nat'l. Ret. Fund v. ESI Grp., Inc.*, No. 92-cv-0597, 2002 WL 999303, at *5, 2002 U.S. Dist. LEXIS 8614, at *16 (S.D.N.Y. May 15, 2002)). As stated, there are no factual allegations whatsoever showing the relationship between Ober Realty and Greene other than the shared addresses. *See id.* (denying motion for default judgment as to common control theory of

10

liability where the plaintiff did "no more than simply conclude that Anchor is a trade or business under common control with D & A," the "obligated entity"). Accordingly, Plaintiffs' motion for default judgment as to withdrawal liability against Ober Realty is denied.

### C.     Damages

"[I]t is well established that '[w]hile a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages.'" *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (citation omitted). "There must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." *Id.* (citing Fed. R. Civ. P. 55(b)(2)). "Magistrate judges and district courts have interpreted this to mean that . . . damages must be based on admissible evidence." *House v. Kent Worldwide Mach. Works, Inc.*, 359 F. App'x 206, 207 (2d Cir. 2010) (summary order).

#### 1.     Unpaid and Delinquent Contributions

Based on Greene's violations of ERISA, the Health Fund seeks to recover: $115,240.00 in delinquent contributions, $10,493.02 in interest calculated from the date due through February 23, 2024, $23,048.00 in liquidated damages, and $3,546.61 in interest on late-paid contributions calculated from the due date until the date paid. (Dkt. No. 15-2, ¶¶ 13–15). Based on Greene and Ober Realty's alleged joint and several withdrawal liability, the Pension Fund seeks to recover: $10,845,125.00 in withdrawal liability, $247,209.42 in interest from the date of acceleration of November 11, 2023, through February 23, 2024, $2,169,025.00 in liquidated damages, and $12,200.26 in attorneys' fees and costs in recovering the withdrawal liability. (Dkt. No. 15-2, ¶ 28; Dkt. No. 15-12, ¶¶ 8–9; Dkt. No. 15-14, at 2).

11

ERISA's civil enforcement provision provides:

In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—

 (A) the unpaid contributions,

 (B) interest on the unpaid contributions,

 (C) an amount equal to the greater of—

  (i) interest on the unpaid contributions, or

  (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

 (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

 (E) such other legal or equitable relief as the court deems appropriate.

For the purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

29 U.S.C. § 1132(g)(2). While interest and liquidated damages on untimely payments made prior to filing suit are not recoverable under ERISA, *Finkel v. Allstate Elec. Corp.*, No. 09-cv-4071, 2010 WL 5558899, at *5, 2010 U.S. Dist. LEXIS 139084, at *14 (E.D.N.Y. Nov. 24, 2010) ("ERISA does not permit damages for contributions paid prior to filing suit, even when those contributions were untimely paid" (citations omitted)), *report and recommendation adopted*, 2011 WL 63600, 2011 U.S. Dist. LEXIS 1489 (E.D.N.Y. Jan. 6, 2011), they may be recoverable "pursuant to a theory of contract law under the [Labor Management Relations Act]," if the plans or funds at issue provide a contractual basis for such an award. *Finkel v. Robco Elec. Corp.*, No.

11-cv-2353, 2012 WL 3306963, at *6, 2012 U.S. Dist. LEXIS 113818, at *19 (E.D.N.Y. Mar. 30, 2012), *report and recommendation adopted*, 2012 WL 3307631, 2012 U.S. Dist. LEXIS 113837 (E.D.N.Y. Aug. 13, 2012) (citations omitted).

In support of the Health Fund's request for damages, Plaintiffs have submitted an affidavit by Ciancaglini, the Administrative Director for the Health Fund and an exhibit purporting to show an "account breakdown setting forth the delinquent contributions and related amounts owed to the Health Fund." (Dkt. No. 15-2, ¶ 14; Dkt. No. 15-8). The exhibit reflecting the unpaid contributions reflects the due date, the contribution amount due, the number of days the contribution has been unpaid, the corresponding interest and liquidated damages. (Dkt. No. 15-8, at 2). It lists the contribution amount due for invoices issued monthly from July 1, 2022 to April 1, 2023, the due dates, and calculates and totals the interest and liquidated damages due with respect to each unpaid invoice. (*Id.*). The documentary evidence thus sufficiently establishes that Greene owes the Health Fund $115,240.00 in delinquent contributions. (Dkt. No. 15-8, at 2). The Health Fund seeks to recover interest on the above delinquent contributions in the amount of $10,493.02, as calculated through February 23, 2024. (Dkt. No. 15-14, at 2). Plaintiffs are "entitled to interest on the unpaid contributions at the rates provided by the Trusts and [Agreements] or, where the Trusts and [Agreements] do not provide a rate, at a rate prescribed by 26 U.S.C. § 6621." *Upstate New York Eng'rs Health Fund v. Ransom*, No. 13-cv-1434, 2015 WL 145441, at *4, 2015 U.S. Dist. LEXIS 2965, at *11 (N.D.N.Y. Jan. 12, 2015) (citing 29 U.S.C. § 1132(g)(2)(B)). Here, Ciancanglini states that interest has been calculated at the Health Fund's prescribed rate of 8 percent (8%) per annum from the date due through February 23, 2024. (Dkt. No. 15-2, ¶ 15(b); Dkt. No. 15-7, at 2 (Health Fund Policy for Collection of Delinquent Contributions, Section 2.3 ("Interest shall be charged at the rate of eight

percent (8%) per year, calculated from the Due Date of the Employer or Employee Contributions, as applicable, until the date paid.")). Thus, the interest sought is calculated in accordance with the parties' contractually agreed upon rates, and the Court awards of $10,493.02 in interest. As the Health Fund is also entitled to liquidated damages in the amount of 20% on the unpaid contributions, an award of $23,048.00 in liquidated damages, as calculated, is also warranted.

The Health Fund also seeks an award of interest on "late-paid" ERISA contributions, that were paid in an untimely manner, but in all cases, paid prior to the filing of this action. (Dkt. No. 15-9 (showing payments between April 5, 2020 and November 21, 2022)). Plaintiffs have established their contractual entitlement to interest on late-paid contributions, (Dkt. No. 15-9, at 2 (Section 2.3)), and have submitted documentary evidence identifying each late-paid contribution, the date due, the date received, and the calculation of interest based on the number of days each payment was late. (Dkt. No. 15-9, at 2). Thus, the documentary evidence sufficiently establishes Plaintiffs' entitlement to an award of interest on the late-paid contributions in the amount of $3,546.61.

Accordingly, Plaintiffs' request for entry of an award of damages in connection with Greene's unpaid and late-paid contributions is granted.

### 2. Withdrawal Liability

While the Court does not make a finding of liability at this time with respect to Plaintiffs' withdrawal liability claims, the Court addresses the documentation Plaintiffs have submitted in support of their damages request. Although Ciancaglini asserts that Greene and Ober Realty's joint and several withdrawal liability is $10,845,125.00, he provides no factual basis for this sum, stating only that this is the amount "assessed by the Pension Fund." (Dkt. No. 15-2, ¶ 19). While Ciancaglini attached an exhibit he describes as "an account breakdown setting forth the

withdrawal liability and related amounts owed to the Pension Fund," (*id.* ¶ 27), that exhibit contains only one line of information:

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **Ar-De's Greene Delinquent Accelerated Withdrawal Liability** | | | | | | | | | |
| Fund | Contribution | Invoice | Due | Date Received or Interest Through | Days Owed | Interest Rate | Interest | Liquidated Damages | Total |
| Pension | $10,845,125.00 | 05/23/23 | 11/11/23 | 2/23/2024 | 104 | 8.00% | $ 247,209.42 | $2,169,025.00 | $13,261,359.42 |
| | | | | | | | | | $13,261,359.42 |

(Dkt. No. 15-11, at 2). As such, if Plaintiffs seek to renew their motion for default judgment in connection with their withdrawal liability claims, they must submit detailed affidavits and documentary evidence showing their entitlement to damages. *See Trs. of Metal Polishers Local 8A-28A Funds v. Prestige Restoration & Maint., LLC*, 986 F. Supp. 2d 159, 165 & n.2 (E.D.N.Y. 2013) (collecting cases where a plaintiff's request for damages was denied due to inadequate authentication and/or unsupported and conclusory assertions of damages owed).

### 3. Attorneys' Fees and Costs

Plaintiffs appear to have adequately supported their request for an award of attorneys' fees and costs with a declaration and contemporaneous billing records. (Dkt. No. 15-12; Dkt. No. 15-13). However, as the Court has yet to determine liability as to Plaintiffs' claims of withdrawal liability, the Court reserves decision on their request for attorneys' fees and costs.

### III. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiffs' motion for default judgment (Dkt. No. 15) is **GRANTED** as to liability and damages with respect to their Unpaid and Delinquent Contributions claim (Count I) but is **DENIED without prejudice to renewal** as to Plaintiffs' withdrawal liability claims (Counts II and III). It is further

**ORDERED** that Plaintiffs are entitled to an award of damages, including: the unpaid contributions in the amount of $115,240.00; interest on the unpaid contributions in the amount of $10,493.02, calculated at the Health Fund's prescribed rate of 8 percent (8%) per annum from the date due through February 23, 2024; liquidated damages equal to twenty percent (20%) of the delinquent contributions owed, in the amount of $23,048.00; and interest on late-paid contributions in the amount of $3,546.61, calculated from the date due until the date paid. The Court will enter judgment accordingly upon the final disposition of all causes of action. It is further

**ORDERED** that Plaintiffs must file and serve any renewed motion for default judgment within 30 days of the date of this Decision. Any renewed motion for default judgment must include: (1) briefing and documentary evidence addressing the deficiencies identified above in connection with their withdrawal liability claims (Counts II and III) against Greene and Ober Realty, including the basis for Ober Realty's liability under 29 U.S.C. § 1301(b)(1) of ERISA; and (2) evidence in admissible form, from individuals with personal knowledge, substantiating their claims for damages. If Plaintiffs do not wish to file a renewed motion for default judgment, they must file and serve a status report within 30 days of the date of this Decision stating how they intend to proceed. And it is further

**ORDERED** that Plaintiffs serve copies of this Memorandum-Decision and Order on Defendants and file a certificate of service within 14 days of the date of this Decision.

**IT IS SO ORDERED.**

Dated: <u>September 16, 2024</u>
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge