UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

UFCW LOCAL ONE HEALTH CARE FUND and its
TRUSTEES: Frank C. DeRiso, Raymond Wardynski,
Robert Ciancaglini, I. Stephen Davis, Roger Hemmitt,    6:23-cv-1441 (BKS/MJK)
Joseph L. Sahlen, and Greg P. Gorea, and UFCW LOCAL
ONE PENSION FUND and its TRUSTEES: Frank C.
DeRiso, Gregory Gorea, Mark Manna, and Michael R.
Bull,

                              Plaintiffs,

v.

GREENE GREAT AMERICAN, INC. and OBER
REALTY, LLC,

                              Defendants.
_____

**Appearance:**

*For Plaintiffs:*
Richard S. Siegel
Slevin & Hart, P.C.
1300 Connecticut Ave., N.W., Suite 700
Washington, DC 20036

**Hon. Brenda K. Sannes, Chief United States District Judge:**

MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

Plaintiffs UFCW Local One Health Care Fund and its trustees, Frank C. DeRiso, Raymond Wardynski, Robert Ciancaglini, I. Stephen Davis, Roger Hemmitt, Joseph L. Sahlen, and Greg P. Gorea, (the "Health Fund") and UFCW Local One Pension Fund and its trustees, Frank C. DeRiso, Gregory Gorea, Mark Manna, and Michael R. Bull (the "Pension Fund"), filed this action against Defendants Greene Great American, Inc. ("Greene") and Ober Realty, LLC, alleging that Defendants violated the Employee Retirement Income Security Act of 1974

("ERISA"), 29 U.S.C. § 1001 et seq. (Dkt. No. 1). The Complaint alleges Defendant Greene failed to pay contributions and deductions in violation of Section 515 of ERISA, 29 U.S.C. § 1145, and that Defendants Greene and Ober Realty are subject to withdrawal liability under Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2). Defendants have not answered the complaint or otherwise appeared in this action. The Court previously granted Plaintiffs' motion for default judgment under Rule 55(b) of the Federal Rules of Civil Procedure on their unpaid contributions and deductions claim but denied Plaintiffs' motion on their withdrawal liability claims. (Dkt. No. 17). Presently before the Court is Plaintiffs' renewed motion for default judgment on their withdrawal liability claims against Greene and Ober Realty. (Dkt. No. 20). For the following reasons, Plaintiffs' renewed motion for default judgment is granted as to Greene but denied as to Ober Realty.

## II.  DISCUSSION

The Court incorporates the factual and procedural background and applicable law as set forth in its prior decision, (Dkt. No. 17), and presumes familiarity with those matters for the purposes of this decision.

### A.  Withdrawal Liability - Greene

In its prior decision, the Court found Plaintiffs failed to allege facts allowing a plausible inference that Greene had effectuated a complete withdrawal from the Pension Fund. (Dkt. No. 17, at 9). The following is a summary of the additional facts, in a sworn affidavit with supporting exhibits, that Plaintiffs provided in their renewed motion.

Greene operated a supermarket in Greene, New York and "was obligated to contribute to the Pension Fund on behalf of certain of" supermarket employees. (Dkt. No. 20-2, ¶ 2). Greene's supermarket "was the only source for Greene's obligation to contribute to the Pension Fund," and its closure on April 5, 2023, "resulted in Greene no longer making contributions to the

Pension Fund." (*Id.* ¶¶ 2– 3). The Pension Fund Trustees accordingly "determined that Greene had completely withdrawn from the Pension Fund within the meaning" of ERISA § 4203, 29 U.S.C. § 1383. (*Id.* ¶ 4).

In a letter to Greene dated May 24, 2023, Michael Ciancaglini, the Pension Fund Administrative Director, explained that the Trustees had learned that Greene had "permanently ceased all covered operations under the Fund on or around April 5, 2023," and had "determined that this constitute[d]" "a complete withdrawal from" the Pension Fund. (Dkt. No. 20-5, at 2). Ciancaglini further explained that Greene's withdrawal had created a "withdrawal liability to" the Fund in the amount of $10,845,125 and attached a calculation by the Fund's consulting actuary. (Dkt. No. 20-5, at 2; *see* Dkt. No. 20-3 (letter dated May 19, 2023 from actuary to Ciancaglini calculating Greene's "proportionate share of the Fund's unfunded vested benefits ('UVBs') to be $10,845,125")). Ciancaglini stated that the letter "serve[d] as a demand for payment of such withdrawal liability in accordance with Section 4219(b)(1) of ERISA" and that Greene was required to pay either "a single installment of $10,845,135 or 80 quarterly installments of $15,254.99," with the first quarterly installment due by August 1, 2023. (Dkt. No. 20-5, at 2). Ciancaglini warned that if Greene failed to make such payment, and failed to cure within sixty days of notification of such failure, the Fund would require immediate payment on the "total outstanding liability." (*Id.* at 3). On August 1, 2023, after Ciancaglini's letter, sent by certified mail, went "unclaimed," the Pension Fund resent the letter to Greene at an alternate address. (Dkt. No. 20-2, ¶ 7). Greene failed to remit the first installment payment by the due date specified in the letter. (*Id.* ¶ 8).

In a letter dated September 12, 2023, Ciancaglini advised Greene that to date, the Pension Fund had not received payment and that if Greene did not pay the first installment, with interest,

3

within "sixty (60) days," Greene would "be in default of its payment obligation" under ERISA 4219(c)(5)(A), and the Pension Fund would be entitled to accelerate the payment obligation and demand immediate payment of the total withdrawal liability. (Dkt. No. 20-6, at 2). To date, Greene has not made any payment toward its withdrawal liability. (Dkt. No. 20-2, ¶ 10). Accordingly, the Pension Fund "accelerated Greene's withdrawal liability obligation" and the "full amount of $10,845,125," plus interest, became due and owing as of November 11, 2023. (*Id.* ¶ 11; *see also id.* ¶ 14 (noting that the Pension Fund's collection policy provides for interest on delinquent contributions "at the rate of eight percent (8%) per year, calculated from the Due Date . . . until the date paid" (quoting Dkt. No. 20-7, Section 2.3))).

"Generally, where a plan sponsor seeks withdrawal liability payments, it must 'show only that it complied with statutory procedural requirements.'" *Div. 1181 Amalgamated Transit Union-New York Emps. Pension Fund v. D & A Bus Co., Inc.*, 270 F. Supp. 3d 593, 608 (E.D.N.Y. 2017) (quoting *Trustees of Amalgamated Ins. Fund v. Steve Petix Clothier, Inc.*, No. 03-cv-4530, 2004 WL 67480, at *2, 2004 U.S. Dist. LEXIS 418, at *7 (S.D.N.Y. Jan. 15, 2004)). "Thus, '[t]he plan sponsor must: (1) determine that an employer has partially or completely withdrawn from a multiemployer plan; (2) determine the amount of the employer's withdrawal liability; (3) notify the employer of the amount of liability and the payment schedule; and (4) demand payment according to the schedule.'" *Id.* at 608–09 (quoting *Steve Petix Clothier, Inc.*, 2004 WL 67480, at *2; 2004 U.S. Dist. LEXIS 418, at *7).

The Pension Fund has established its entitlement to a finding of withdrawal liability as to Greene. The Trustees determined, upon the April 5, 2023, closure of Greene's supermarket, which "was the only source for Greene's obligation to contribute to the Pension Fund," that the employer had completely withdrawn from the Pension Fund. (Dkt. No. 20-2, ¶¶ 2–3). The

4

Pension Fund's actuary prepared an estimate of Greene's share of the "Unfunded Vested Benefits," in the amount of $10,845,125. (Dkt. No. 20-3, at 2). The Pension Fund then notified Greene of the amount of its withdrawal liability and the payment amount and schedule and demanded payment. (Dkt. Nos. 20-5, 20-6). Plaintiffs therefore have satisfied the statutory and procedural requirements for withdrawal liability as to Greene. *See D & A Bus Co.*, 270 F. Supp. 3d at 609 (finding the plaintiff "satisfied the statutory prerequisites set forth in 29 U.S.C. § 1399(b)" entitling it to default judgment as to withdrawal liability upon showing the defendant's complete withdrawal and that the plaintiff determined the amount of withdrawal liability based on an actuarial report, and sent notice, demand, and payment schedule to the employer).

The Pension Fund has also established its entitlement under 29 U.S.C. § 1399(c)(5)(A), to accelerated payment of the total withdrawal liability amount. Section 1399 provides, in relevant part, that "a plan sponsor may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest" upon "the failure of an employer to make, when due, any payment under this section, if the failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure." 29 U.S.C. § 1399(c)(5)(A). According to Plaintiffs, the Pension Fund sent Greene notice on May 24, 2023, and again on August 1, 2023, that the first installment of the quarterly withdrawal liability payments was due by August 1, 2023. (Dkt. Nos, 20-5, 20-6). No payment was received and on September 12, 2023, the Pension Fund notified Greene that unless the first installment was received within 60 days, Greene would be deemed to be in default, and the Pension Fund would require the total outstanding amount. (Dkt. No. 20-6, at 2). Plaintiffs assert that, to date, Greene has failed to remit any payment on its withdrawal liability. (Dkt. No. 20-2, ¶ 10). Therefore, Plaintiffs are entitled to the total unpaid withdrawal liability plus accrued interest. *See D & A Bus*

*Co.*, 270 F. Supp. 2d at 610 (finding the plaintiff had established its entitlement to full amount of withdrawal liability plus interest where alleged that it sent the employer the requisite notice and that the employer failed to pay).

### B. Withdrawal Liability – Ober Realty

In its prior decision, the Court found that in the absence of any factual allegations regarding the relationship between Ober Realty and Greene, other than their shared address, Plaintiffs failed to show Ober Realty was a trade or business under common control with Greene for purposes of joint withdrawal liability. (Dkt. No. 17, at 10–11). In their renewed motion, Plaintiffs assert that Jeffrey Mies signed the collective bargaining agreement in his capacity as Greene's president. (Dkt. No. 15-4, at 44). The address listed with the New York Department of State for both Greene and Ober Realty is 4 Sandy Lane, Binghamton, New York, which is a residence owned by Mies. (Dkt. Nos. 20-10, 20-11). Finally, the property from which Greene operated its supermarket is owned by Ober Realty. (Dkt. No. 20-8, ¶ 7; Dkt. No. 20-12 (property detail summary for 4 Sandy Lane)).

"All 'trades or businesses' under 'common control' are treated as a single employer for the purpose of collecting withdrawal liability, and each is jointly and severally liable for the withdrawal liability of another." *UFCW Loc. One Pension Fund v. Enivel Props., LLC*, 791 F.3d 369, 371 (2d Cir. 2015) (citing 29 U.S.C. § 1301(b)(1)). "In order to impose withdrawal liability on an organization other than the one obligated to the pension fund, two conditions must be satisfied: the second organization must be (1) under common control with the obligated entity; and (2) a 'trade or business.'" *Id.* at 373 (citing 29 U.S.C. § 1301(b)(1)).

Under 29 U.S.C. § 1301(b)(1) of ERISA, "[a]ll 'trades or businesses' under 'common control' are treated as a single employer for the purpose of collecting withdrawal liability, and each is jointly and severally liable for the withdrawal liability of another." *Trustees of the Local 813 Pension Tr. Fund v. Frank Miceli Jr. Contracting, Inc.*, No. 13-cv-0198, 2016 WL 1275041, at *3, 2016 U.S. Dist. LEXIS 44392, at *7 (E.D.N.Y. Mar. 31, 2016) (quoting *UFCW Local One Pension Fund v. Enivel Props., LLC*, 791 F.3d 369, 371 (2d Cir. 2015)); *see also* Internal Revenue Code § 414(c). "Common control" can be established where entities "are members of a 'parent-subsidiary' or 'brother-sister' group of trades or businesses under common control. *I.L.G.W.U. Nat'l. Ret. Fund v. ESI Grp., Inc.*, No. 92-cv-0597, 2002 WL 999303, at *5, 2002 U.S. Dist. LEXIS 8614, at *16 (S.D.N.Y. May 15, 2002) (citing 26 C.F.R. § 1.414(c)–2(a)), *aff'd sub nom. I.L.G.W.U. Nat. Ret. Fund v. Meredith Grey, Inc.*, 94 F. App'x 850 (2d Cir. 2003). "For purposes of determining 'common control,' Section 4001(b) of ERISA, 29 U.S.C. § 1301(b), refers to the regulations proscribed by the Secretary of Treasury under Section 414(c) of the Internal Revenue Code of 1954." *Id.* 2002 WL 999303, at *5, 2002 U.S. Dist. LEXIS 8614, at *15 (citing 26 C.F.R. § 1.414(c)–2(b)). These regulations define a "parent-subsidiary group" as "one or more chains of organizations conducting trades or businesses connected through ownership of a controlling interest with a common parent organization," 26 C.F.R. § 1.414(c)-2(b), "if a controlling interest in each of the organizations, except the common parent organization, is owned by one or more of the other organizations and the common parent organization owns a controlling interest in at least one of the other organizations," *ESI Group, Inc.*, 2002 WL 999303, at *5, 2002 U.S. Dist. LEXIS 8614, at *16 (citing 26 C.F.R. § 1.414(c)-2(b)). The regulations define "[t]he term 'brother-sister group'" as:

> Two or more organizations conducting trades or businesses if (i) the same five or fewer persons who are individuals, estates, or trusts

7

> own . . . a controlling interest in each organization, and (ii) taking into account the ownership of each such person only to the extent such ownership is identical with respect to each such organization, such persons are in effective control of each organization. The five or fewer persons whose ownership is considered for purposes of the controlling interest requirement for each organization must be the same persons whose ownership is considered for purposes of the effective control requirement.

26 C.F.R. § 1.414(c)-2(c); *see also ESI Group, Inc.*, 2002 WL 999303, at *6, 2002 U.S. Dist. LEXIS 8614, at *18 (explaining that a "'brother-sister' group of trades or businesses under common control must be controlled by the same five or fewer persons owning at least 80% of the shares of each corporation, with at least 50% of the shareholder's ownership interests in each corporation identical" (citing 26 C.F.R. § 1.414(c)–2)).

According to Plaintiffs, Ober Realty owned the property on which the Greene supermarket was located, Greene and Ober Realty have the same corporate address, and this address is also the residence of Jeffrey Mies, who signed Greene's collective bargaining agreement in his capacity as Greene's president. (Dkt. Nos. 15-3, 20-10, 20-11, 20-12, 20-13). Plaintiff's allegations falter at the most basic level as there are no allegations regarding who has a controlling or ownership interest in either organization.[1] Accordingly, Plaintiffs' motion for default judgment as to Ober Realty for withdrawal liability is denied. *See Div. 1181 Amalgamated Transit Union-New York Emps. Pension Fund v. D & A Bus Co., Inc.*, 270 F.

---

[1] Plaintiffs cite *Trustees of United Teamster Fund v. Phoenix Laboratories, Inc.*, No. 08-cv-4926, 2010 WL 1267783, at *2, 2010 U.S. Dist. LEXIS 31301, at *7 (E.D.N.Y. Mar. 4, 2010), *report and recommendation adopted*, 2010 WL 1268088 (E.D.N.Y. Mar. 29, 2010), in support of their assertion that because their well-pleaded allegations are deemed admitted in light of Defendants' default, their allegations are sufficient to establish "common control" for purposes of withdrawal liability against Ober Realty. (Dkt. No. 20-1, at 9). They also submitted a copy of the Phoenix Laboratories amended complaint, which, they assert, "reflects that the plaintiffs alleged that the corporate defendants were under common control solely upon information and belief." (*Id.*; *see* Dkt. No. 20-14 (Phoenix Laboratories' amended complaint)). While Plaintiffs accurately recount one of the allegations in the Phoenix Laboratories pleading, the 54-page amended complaint contained two additional factual allegations: it identified the principals and corporate officers of the corporate defendants, and alleged that that Evergood, a named defendant was "the corporate parent" of seven other corporate defendants, including Phoenix Laboratories. (Dkt. No. 20-14, at 7–8). Accordingly, the Court finds Plaintiffs' reliance on *Phoenix Laboratories* unavailing.

Supp. 3d 593, 611 (E.D.N.Y. 2017) (denying default judgment as to withdrawal liability under common control theory where the plaintiff did "no more than simply conclude that Anchor is a trade or business under common control with D & A, without setting forth facts from which it reached that conclusion," explaining that even for default judgment "conclusory allegations, without more, are insufficient to establish liability").

### C.     Damages

Having found Plaintiffs are entitled to a finding of liability with respect to their withdrawal liability claim against Greene, the Court considers the documentary evidence Plaintiffs have submitted in support of their request for damages.

#### 1.     Withdrawal Liability

As Plaintiffs correctly note, (Dkt. No. 20-1, at 5), because Greene failed "to request arbitration within the statutory time frame, it is barred from challenging the amount of withdrawal liability calculated by the plan." *D & A Bus Co.*, 270 F. Supp. 3d at 612 (quoting *Trs. of Loc. 531 Pension Fund v. Flexwrap Corp.*, 818 F. Supp. 2d 585, 589 (E.D.N.Y. 2011)); *see Pavers & Rd. Builders Dist. Council Pension Fund by Montelle v. Nico Asphalt Paving, Inc.*, 248 F. Supp. 3d 374, 378 (E.D.N.Y. 2017) ("If arbitration is not commenced within the statutory timeframe, the plan's determination of the employer's withdrawal liability becomes final and must be paid in accordance with the schedule set forth in the initial notice." (citing 29 U.S.C. § 1401(b)(1)). Plaintiffs seek $10,845,125 in withdrawal liability based on the estimate prepared by its actuary. (Dkt. No. 20-3, at 2). Having reviewed the actuary's letter, and in light of Greene's failure to contest the withdrawal liability determination or appear in this matter, the Court concludes Plaintiffs sufficiently established the amount of withdrawal liability owed in this case. *Ret. Fund of Loc. 1482 Paint & Allied Prods. Manufacturers v. N. Adhesives, Inc.*, No. 22-cv-5850, 2023 WL 7688689, at *4, 2023 U.S. Dist. LEXIS 106678, at *8 (E.D.N.Y. June 20,

2023) (recommending award of "$6,221,319 in withdrawal liability principal, as calculated by plaintiff's actuary" where the defendant "failed to make the withdrawal liability payments as required by" the plaintiff's notice and demand letters "and did not request arbitration to contest the amount of withdrawal liability owed"), *report and recommendation adopted*, 2023 U.S. Dist. LEXIS 119385 (E.D.N.Y. July 11, 2023).

### 2. Liquidated Damages and Interest

In addition, Plaintiffs seek liquidated damages equal to 20 percent of the accelerated withdrawal liability, $2,169,025, and interest at the rate of 8 percent per annum from the acceleration date to October 16, 2024, in the amount of $808,184.66. (Dkt. No. 20-1, at 7). Both ERISA, 29 U.S.C. § 1132(g)(2) and Plaintiffs' Delinquent Contribution Policy provide for liquidated damages and interest. (*See* Dkt. No. 20-4, at 14 (UFCW Withdrawal Liability Policy, § 8.6(b)(2) allowing for "liquidated damages of 20 percent"); Dkt. No. 20-7, at 3 (UFCW Delinquent Contribution Policy, § 2.3 providing that "[i]nterest shall be charged at the rate of eight percent (8%) per year")); *see also D & A Bus Co.*, 270 F. Supp. at 615–16 (awarding liquidated damages of 20 percent and interest on withdrawal liability).

### 3. Attorney Fees and Costs

Plaintiffs seek and are entitled to recover the attorneys' fees and costs they incurred in connection with their efforts to collect the delinquent contributions and deductions in this case. ERISA and the applicable provisions of the underlying contracts allow for such an award. *See* 29 U.S.C. § 1132(g)(2)(D) (reasonable attorney's fees and costs of the action); (*see also* Dkt. No. 20-4, at 9 (providing that "the Employer must reimburse the Fund for all of the expenses it incurs in the collection process, including attorneys' fees")). Plaintiffs seek an award of attorneys' fees and costs in the amount of $23,412.86. (Dkt. No. 20-1, at 10).

### a. Hourly Rates

Plaintiff requests that the principal attorneys, Goodman, Sanchez, Swyers, and Leins be compensated at rates of $420 to $530 per hour, that Lapoff, who is of counsel, be compensated at a rate of $375 per hour, that the associate attorneys, Siegel and Salamoun, be compensated at rates of $376.09 to $410 per hour, and that the paralegals be compensated at rates of $217.31 to $220.00 per hour.

**Attorney and Paralegal Fees Requested**

| Name | Title | Years of Experience | Hours and Rate | Total Fees |
|---|---|---|---|---|
| Sharon Goodman, Esq. | Principal | 35 | 0.20 Hours/$530.00 | $106.00 |
| Sarah Sanchez, Esq. | Principal | 23 | 0.50 Hours/$498.00<br>1.40 Hours/$510.00 | $249.00<br>$714.00 |
| Cindy Lapoff, Esq. | Of Counsel | 28 | 0.20 Hours/$375.00 | $75.00 |
| Jeffrey Swyers, Esq. | Principal | 29 | 2.20 Hours/$505.00<br>0.90 Hours/$525.00 | $1,111.00<br>$472.50 |
| Richard Siegel, Esq. | Associate | 16 | 2.40 Hours/$379.50<br>17.10 Hours/$410.00 | $954.00<br>$7,011.00 |
| Kristina Salamoun, Esq. | Associate | 9 | 10.10/$376.09<br>3.90/$389.00 | $3,798.50<br>$1,501.50 |
| Christopher Leins, Esq. | Principal | 9 | 1.30 Hours/$420.00 | $546.00 |
| Nezah Khandker | Paralegal | N/A | 0.10 Hours/$220.00 | $22.00 |
| Shreya Iyer | Paralegal | N/A | 22.30 Hours/$217.31<br>4.10 Hours/$220.00 | $4,846.00<br>$902.00 |
| | | | **Total Hours: 66.70** | **Total Fees: $22,308.50** |

District courts have "considerable discretion in determining what constitutes reasonable attorney's fees in a given case." *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 151 (2d Cir. 2008). "In calculating attorney's fees, the district court must first determine the 'lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—[which] creates a presumptively reasonable fee.'" *Stanczyk v. City of New York*, 752 F.3d 273, 284 (2d Cir. 2014) (quoting *Millea v. Metro–N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)). This approach requires a district court to set "a reasonable hourly rate, taking account of all case-specific variables," and determine "the appropriate billable hours expended."

11

*Lilly v. City of New York*, 934 F.3d 222, 229–30 (2d Cir. 2019) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 189–90 (2d Cir. 2008)); *see also Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992) ("Under this approach, the number of hours reasonably expended on the litigation is multiplied by a reasonable hourly rate for attorneys and paraprofessionals."). "The reasonable hourly rate should be what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Bergerson v. N.Y. State Off. of Mental Health*, 652 F.3d 277, 289–90 (2d Cir. 2011) (citation and internal quotation marks omitted). "[T]he district court . . . bears the burden of disciplining the market, stepping into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 184.

The Supreme Court has explained that district courts should generally use "the prevailing market rates in the relevant community" in determining the reasonable hourly rate. *See Blum v. Stenson*, 465 U.S. 886, 895 (1984). The Second Circuit has interpreted the "community" to mean "the district where the district court sits." *See Arbor Hill*, 522 F.3d at 190 (citing *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983)); *see also Grant v. Syracuse*, 357 F. Supp. 3d 180, 200 (N.D.N.Y. 2019) (citation omitted). A review of cases in this District indicates that the following hourly rates (or rate ranges) are reasonable: $250–$350 for partners;[2] $165–$200 for associates;[3] and $80–$95 for paralegals, legal assistants, and other paraprofessionals.[4]

---

[2] *See Sadowski v. Urbanspotlite LLC*, No. 22-cv-887, 2023 WL 2838376, at *6, 2023 U.S. Dist. LEXIS 61259, at *15 (N.D.N.Y. Apr. 7, 2023); *see also Grant v. Lockett*, 605 F. Supp. 3d 399, 404 (N.D.N.Y. 2022).

[3] *See Sadowski*, 2023 WL 2838376, at *6, 2023 U.S. Dist. LEXIS 61259, at *15; *see also Grant*, 605 F. Supp. 3d at 404.

[4] *See Sadowski*, 2023 WL 2838376, at *6, 2023 U.S. Dist. LEXIS 61259, at *15; *see also Grant*, 605 F. Supp. 3d at 404; *Upstate New York Eng'rs Health Fund by Spaulding v. Pumpcrete Corp.*, No. 21-cv-00344, 2022 WL 595701, at *8 (N.D.N.Y. Feb. 28, 2022).

Additionally, "[o]nce the typical hourly rate is established, the court should 'bear in mind *all* of the case-specific variables that . . . courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate,'" *Grant*, 605 F. Supp. 3d at 405 (quoting *Arbor Hill*, 522 F.3d at 190), including:

> (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill level required by the case; (4) the preclusion of employment with other clients due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or the circumstances; (8) the extent of involvement in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* (citing *Arbor Hill*, 522 F.3d at 186 n.3).

As indicated by the typical ranges for partners, associates, and paralegals discussed above, the requested fees are higher than what attorneys and paralegals have been awarded in other cases in this district. Considering all of the relevant factors, with emphasis on the experience of the attorneys, the Court finds the appropriate rate for the principal attorneys, Goodman, Sanchez, Swyers, and Leins, to be $350 per hour, that the appropriate rate for the associate attorneys, Siegel and Salamoun, as well as Lapoff, who is listed as of counsel,[5] to be $200 per hour, and the that appropriate rate for the paralegals to be $95 per hour.

### b.    Hours Worked

Plaintiffs' counsel seeks compensation for 40.2 hours of attorney time and 26.5 hours of paralegal time. In *Hensley v. Eckerhart*, the Supreme Court emphasized that when calculating what constitutes reasonable attorneys' fees, "the most critical factor is the degree of success

---

[5] Given Lapoff's 28 years as an attorney, she may be entitled to a greater rate of compensation, but as the record contains no information regarding fields of expertise, reputation, or professional experience, the Court awards the high end of the associate rate.

obtained." 461 U.S. 424, 436 (1983).[6] When a plaintiff succeeds on only some of his claims for relief, the Court considers two factors: first, whether "the plaintiff fail[ed] to prevail on claims that were unrelated to the claims on which he succeeded," *id.* at 434, and second, whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Id.* The Supreme Court has recognized that in some cases "the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories." *Id.* at 435. In such cases where "[m]uch of counsel's time [is] devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis . . . the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* Additionally, "[c]ourts in this Circuit have recognized a district court's authority to make across-the-board percentage cuts in hours, as opposed to an item-by-item approach, to arrive at the reasonable hours expended." *United States ex rel. Nichols v. Comput. Scis. Corp.*, 499 F. Supp. 3d 32, 41 (S.D.N.Y. 2020) (citation omitted).

Plaintiffs have obtained a finding of liability and award of damages as to their delinquent contributions and withdrawal liability claims, (Dkt. No. 1, at 8–9 (Counts I and II)), against Defendant Greene, (Dkt. No. 1, at 8–9). However, despite having the opportunity to file a renewed motion for default judgment, Plaintiffs have twice failed to establish liability as to their withdrawal liability claim against Defendant Ober Realty. (Dkt. No. 1, at 9–10 (Count III)). But this does not necessarily warrant a reduction in fees since the relief sought in connection with the withdrawal liability claim against Defendant Greene, which was successful, was identical to the

---

[6] "'Though *Hensley* deals with attorney's fees pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, courts have applied the same standards when determining the reasonableness of fees sought pursuant to' ERISA." *Finkel v. Zizza Assocs. Corp.*, No. 12-cv-4108, 2023 WL 8455937, at *10 n.15, 2023 U.S. Dist. LEXIS 217242, at *32 n.15 (E.D.N.Y. Dec. 6, 2023) (citation omitted).

relief sought against Defendant Ober Realty. *See Finkel*, 2023 WL 8455937, at *11, 2023 U.S. Dist. LEXIS 217242, at *36 ("Prevailing on the alter ego claim provides a total recovery for Plaintiff since all its claims sought identical relief -- i.e., to hold the Moving Defendants liable for the withdrawal liability. As such, failure to prevail on the evade-or-avoid, or controlled group claims does not warrant a reduction in fees."). Moreover, the vast majority of the evidentiary submissions in support of default judgment concerned Defendant Greene, the delinquent contributions, and withdrawal liability and less than one-third of the renewed memo of law, (Dkt. No. 20-1, at 7–10), and an even smaller fraction of the original memorandum of law, (Dkt. No. 15-1, at 7–8), were dedicated to the claim against Ober Realty. Accordingly, the Court finds the number of hours sought reasonable in this case and reduces the hourly rates to conform to the hourly rates reasonable to the Northern District of New York, as follows:

**Attorney and Paralegal Fees Awarded**

| Name | Title | Years of Experience | Hours and Rate | Total Fees |
|---|---|---|---|---|
| Sharon Goodman, Esq. | Principal | 35 | 0.20 Hours/$350.00 | $70.00 |
| Sarah Sanchez, Esq. | Principal | 23 | 1.90 Hours/$350.00 | $665.00 |
| Cindy Lapoff, Esq. | Of Counsel | 28 | 0.20 Hours/$200.00 | $40.00 |
| Jeffrey Swyers, Esq. | Principal | 29 | 3.10 Hours/$350.00 | $1,085.00 |
| Richard Siegel, Esq. | Associate | 16 | 19.50 Hours/$200.00 | $3,900.00 |
| Kristina Salamoun, Esq. | Associate | 9 | 14.00 Hours/$200.00 | $2,800.00 |
| Christopher Leins, Esq. | Principal | 9 | 1.30 Hours/$350.00 | $455.00 |
| Nezah Khandker | Paralegal | N/A | 0.10 Hours/$95.00 | $9.50 |
| Shreya Iyer | Paralegal | N/A | 26.40 Hours/$95.00 | $2,508.00 |
| | | Total Hours: | 40.2 Attorney Hours + 36.5 Paralegal Hours = 66.70 Hours | |
| | | Total Fees: | $11,532.50 | |

In addition, having reviewed Plaintiffs' request for costs in the amount of $1,104.36 in their renewed motion, (Dkt. No. 15-13, at 6; Dkt. No. 20-15, at 5), and having found it reasonable, the Court grants Plaintiffs' request. Accordingly, the Court awards $11,532.50 in attorney and paralegal fees and $1,104.36 in costs.

### III. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiffs' renewed motion for default judgment (Dkt. No. 20) is **GRANTED** as to liability and damages with respect to their Withdrawal Liability claim against Defendant Greene (Count II) but is **DENIED** as to Plaintiffs' Withdrawal Liability claim against Defendant Ober Realty (Count III). It is further

**ORDERED** that Plaintiffs are entitled to an award of damages as follows: withdrawal liability in the amount of $10,845,125, liquidated damages in the amount of $2,169,025, interest at the rate of 8 percent per annum from the acceleration date, to October 16, 2024, in the amount of $808,184.66; and $11,532.50 in attorney and paralegal fees and $1,104.36 in costs; and it is further

**ORDERED** that Plaintiffs file, by June 10, 2025, a status report indicating how they wish to proceed as to their withdrawal liability claim against Defendant Ober Realty (Count III). Once the disposition of Count III is determined, the Court will enter judgment in accordance with this Memorandum-Decision and Order and its prior Order. (Dkt. No. 17). And it is further

**ORDERED** that Plaintiffs serve copies of this Memorandum-Decision and Order on Defendants and file a certificate of service within 14 days of the date of this Decision.

**IT IS SO ORDERED.**

Dated: May 27, 2025
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge